UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAVELLE SEARCY,

       Plaintiff,                          Hon. Paul L. Maloney

v.                                             Case No. 1:07 CV 838

CORRECTIONAL MEDICAL
SERVICES, et al.,

       Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendant Merlau's Motion for Summary Judgment, (dkt. #24), and Defendant Correctional Medical Services, Inc., Margaret Ouellette, and Raymond Gelabert, M.D.'s Motion for Summary Judgment, (dkt. #38). Pursuant to 28 U.S.C. § 636(b)(1)(B), the Court recommends that Defendant Merlau's Motion for Summary Judgment, (dkt. #24), be **granted**; and Defendant Correctional Medical Services, Inc., Margaret Ouellette, and Raymond Gelabert, M.D.'s Motion for Summary Judgment, (dkt. #38), be **granted in part and denied in part**.

## BACKGROUND

The following allegations are contained in Plaintiff's complaint. On March 23, 2007, Plaintiff arrived at the Jackson State Prison to begin serving a 2-10 year sentence. On March 26, 2007, Plaintiff was examined by Dr. Taludker. Plaintiff informed the doctor of a right ankle injury he suffered prior to his incarceration. According to Plaintiff, his injury required surgery and he was awaiting ankle surgery when he was arrested for the crime that resulted in his incarceration. On April 1, 2007, x-rays

were taken of Plaintiff's right ankle. On April 20, 2007, Plaintiff inquired as to the results of his x-rays. Plaintiff was informed that his x-rays "were not back from Radiology." Dr. Taludker prescribed Elavil (a pain medication) for Plaintiff.

On May 9, 2007, Plaintiff was transferred to the Florence Crane Correctional Facility. Upon his arrival, Plaintiff was examined by "a nurse" who performed a "preliminary health screening." Plaintiff informed this nurse that his pain medication was "not working for this pain." Plaintiff further informed this nurse that "surgery was needed on [his] right ankle." On May 13, 2007, Plaintiff reported that his ankle pain "was only getting worse." Plaintiff requested that he be prescribed different medication. On May 22, 2007, Dr. Gelabart, without having first examining Plaintiff, "discontinued Plaintiff's medication altogether and ordered Plaintiff nothing."

On May 30, 2007, Plaintiff was examined by Defendant Ouellette (a physician's assistant). Defendant Merlau (a registered nurse) was also "present" during this examination. Plaintiff reported that he needed ankle surgery. Defendant Ouellette performed a "comprehensive history and physical examination," after which she (and Defendant Merlau) concluded that Plaintiff suffered from arthritis. Plaintiff was prescribed tennis shoes, which he received on or about June 14, 2007. By this time, however, Plaintiff's right ankle had "swollen so big [that he] was not able to walk for a week."

Plaintiff initiated this action on August 27, 2007, against Defendants Gelabert, Ouellette, Merlau, and Correctional Medical Services (CMS). Plaintiff asserts that Defendants Gelabert, Ouellette, and Merlau violated his Eighth Amendment right to be free from cruel and unusual punishment by failing to provide him with "appropriate medical treatment." Plaintiff further asserts that CMS established the "protocol" pursuant to which Defendants Gelabert, Ouellette, and Merlau unlawfully acted.

## ANALYSIS

**I.        Exhaustion**

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 127 S.Ct. 910, 921 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing. *Id.* With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 126 S.Ct. 2378, 2386-87 (2006). In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 127 S.Ct. at 922-23.

Defendants assert that Plaintiff has filed only one grievance (ACF-2007-06-0458-12D1)[1] regarding the allegations contained in his complaint. (Dkt. #25, Exhibit 1). Plaintiff neither disputes this nor has he submitted evidence to the contrary. In this particular grievance Plaintiff asserts that he was examined by Defendant Ouellette on May 30, 2007. Plaintiff asserts that Defendant Ouellette examined his right ankle and medical history (including x-rays), after which she agreed with Dr.

---

[1] This grievance was initially identified as ACF-2007-06-0458-*28I*, but was subsequently designated as ACF-2007-06-0458-*12D1*. *See* Dkt. #25, Exhibit 1.

Taludker that Plaintiff was suffering from arthritis. Defendant Ouellette then ordered special shoes for Plaintiff. Defendant Ouellette apparently did not agree with Plaintiff that he required surgery. Plaintiff pursued this grievance through all three steps of the grievance process.

This grievance, however, constitutes proper exhaustion of only one of the claims asserted by Plaintiff in his complaint, namely his claim that Defendant Ouellette violated his Eighth Amendment rights by failing to provide him with appropriate medical treatment. While Plaintiff asserts in his complaint that Defendant Merlau was "present" during the aforementioned May 30, 2007 examination, Plaintiff fails to identify Defendant Merlau in his grievance in violation of MDOC policy. *See* Michigan Department of Corrections, Policy Directive 03.02.130 ¶ T (effective December 19, 2003) ("[d]ates, times, places and names of all those involved in the issue being grieved are to be included" in a grievance). Plaintiff's grievance likewise fails to make any mention of Defendant Gelabert or the May 13, 2007 incident which forms the basis of his claim against Defendant Gelabert. Finally, Plaintiff has asserted against CMS the claim that it has established a "protocol" pursuant to which Defendants acted to violate his rights. Again, Plaintiff's grievance neither identifies CMS nor contains any reference to this allegedly illegal "protocol." The Court concludes, therefore, that Plaintiff has failed to properly exhaust the claims asserted in his complaint against Defendants Merlau, Gelabert, and CMS.

**II.         Plaintiff's Claims Against Defendant Ouellette**

Defendant Ouellette asserts that Plaintiff's claims against her must be dismissed for failure to state a claim upon which relief may be granted. When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all Plaintiff's allegations and construe the complaint liberally in Plaintiff's favor. *See Herron v. Harrison*, 203 F.3d

410, 414 (6th Cir. 2000). Furthermore, complaints filed by pro se plaintiffs are held to an "especially liberal standard, and should only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Id.* (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

With respect to the May 30, 2007 incident which forms the basis of his claim against Ouellette, Plaintiff asserts the following in his complaint:

> On May 30, 2007, Plaintiff was seen by P.A. Margaret A. Ouellette, with Patricia A. Merlau, RN Supervisor present. Plaintiff explained that surgery is needed on his right ankle and that he needed shoes to wear. P.A. Margaret Ouellette, did a "Comprehensive History and Physical Examination", looked in Plaintiff's file and stated that Plaintiff has "Arthritis". P.A. Margaret Ouellette, along with RN Patricia Merlau, concluded that Plaintiff has "Arthritis". During the exam, Plaintiff could not keep his balance, stand on his right leg, and his mobility was off. Plaintiff again, at that time informed P.A. Margaret A. Ouellette, and RN Patricia A. Merlau, that Plaintiff needed surgery and that the problem is internal.

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976). Accordingly, the Eighth Amendment protects against the unnecessary and wanton infliction of pain, the existence of which is evidenced by the "deliberate indifference" to an inmate's "serious medical needs." *Estelle*, 429 U.S. at 104-06; *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001).

The analysis by which Defendant's conduct is evaluated consists of two-steps. First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious. In this respect, "the inmate must show that he is incarcerated under conditions posing a substantial risk of

serious harm." *Farmer*, 511 U.S. at 834. If the objective test is met, the Court must then determine whether the officials possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.

In other words, Plaintiff must establish that Defendant "actually knew" that he "faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it." *Howard v. Calhoun County*, 148 F.Supp.2d 883, 888-89 (W.D. Mich. 2001) (citing *Farmer*, 511 U.S. at 847).

Defendant Ouellette asserts that she is entitled to relief because "Plaintiff's Complaint is that [she] misdiagnosed his condition as 'arthritis.'" Defendant is correct that to the extent that Plaintiff merely disagrees with the treatment Ouellette provided or asserts that he received negligent care, such fails to state a claim upon which relief may be granted. *See, e.g., Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)) ("[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *Brown v. Kashyap*, 2000 WL 1679462 at *1 (6th Cir., Nov. 1, 2000) (citing *Estelle*, 429 U.S. at 106) ("allegations of medical malpractice or negligent diagnosis and treatment" do not implicate the Eighth Amendment).

While Defendant Ouellette's interpretation of Plaintiff's claim might be plausible, it is also the result of construing Plaintiff's claim liberally in Ouellette's favor. As previously noted, however, in evaluating Defendant's Ouellette's motion to dismiss the Court must accept Plaintiff's allegations as true and construe the complaint liberally in his favor. When so construed, the Court

concludes that Plaintiff may very well be able to establish facts in support of his claim that would entitle him to relief. For example, if Plaintiff can demonstrate that as of May 30, 2007, his ankle injury was so severe (and so obvious) that Defendant Ouellette knew that her treatment decisions constituted an excessive risk to Plaintiff's health or safety, he would be entitled to relief. Plaintiff may ultimately be unable to make such a showing, but at this juncture Defendant Ouellette has failed to demonstrate that Plaintiff cannot do so. Accordingly, the Court recommends that Defendant Ouellette's motion to dismiss be **denied**.

## CONCLUSION

For the reasons articulated herein, the Court recommends that Defendant Merlau's Motion for Summary Judgment, (dkt. #24), be **granted**; and Defendant Correctional Medical Services, Inc., Margaret Ouellette, and Raymond Gelabert, M.D.'s Motion for Summary Judgment, (dkt. #38), be **granted in part and denied in part**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date:  December 29, 2008    /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge