UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAVALLE W. SEARCY #195469,

       Plaintiff,

            v.

CORRECTIONAL MEDICAL SERVICES, INC.,
MARGARET A. OUELETTE, P.A.,
DR. RAYMOND GELABERT, M.D.,
and PATRICIA A. MERLAU, R.N.,

       Defendants.

Case No. 1:07-cv-838

HONORABLE PAUL L. MALONEY

Magistrate Judge Ellen S. Carmody

**OPINION and ORDER**

**Overruling the Plaintiff's Objection;
Sustaining Defendant Ouellette's Objection;
Adopting the R&R in Part and Rejecting it in Part;**

**Dismissing Claims against CMS, Delabert & Merlau Without Prejudice for Failure to Exhaust;
Dismissing Claim Against Ouellette *With* Prejudice for Failure to State a Claim;**

**Terminating and Closing the Case**

Pursuant to 28 U.S.C. § 636 and W.D. MICH. LCIVR 72.2(b), this matter was automatically

referred to the Honorable Ellen S. Carmody, United States Magistrate Judge, who issued a Report

and Recommendation ("R&R") on December 29, 2008.  Plaintiff Lavalle W. Searcy filed a timely

objection to the recommendation that three defendants – CMS, Dr. Raymond Gelabert M.D., and

Patricia A. Merlau R.N. – be dismissed due to his failure to exhaust administrative remedies as to

them.  Defendant Margaret A. Ouelette, P.A., filed a timely objection to the recommendation that

her motion to dismiss for failure to state a claim be denied.  The court also finds that the objections are sufficiently specific and articulated to trigger *de novo* review of the portions of the R&R to which the parties have objected.[1]

**The court finds the R&R to be well-reasoned with regard to the summary-judgment motion of defendants CMS, Dr. Gelabert, and Nurse Merlau, and is unconvinced by the plaintiff's objection.**  Searcy asserts a section 1983 / Eighth Amendment claim of deliberate indifference to known serious medical needs with regard to a May 2007 incident  For the reasons explained by the R&R, Searcy failed to exhaust his administrative remedies as to CMS, Gelabert, and Merlau, and his claims against them must be dismissed without prejudice.

As the Magistrate correctly notes, R&R at 3, a prisoner must exhaust his administrative remedies before filing a civil-rights claim or habeas corpus petition in federal court, but the burden is on the defendant (or respondent) to plead and prove the affirmative defense of failure to exhaust those remedies.  *Horacek v. Caruso*, 2009 WL 125398, *1 (W.D. Mich. Jan. 15, 2009) (Maloney, C.J.) (citing *Jones v. Bock*, 549 U.S. 199, __, 127 S.Ct. 910, 919-21 (2007)).  To do so, the defendants must show that no reasonable factfinder could find that he satisfied the exhaustion

---

[1]

 "'Only those objections that are specific are entitled to a *de novo* review under the statute.'" *Westbrook v. O'Brien*, 2007 WL 3462337, *1 (W.D. Mich. Nov. 15, 2007) (Maloney, J.) (citing *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (no *de novo* review where the objections are frivolous, conclusory or too general because the burden is on the parties to "pinpoint those portions of the Magistrate's report that the district court must specifically consider")).

 *See, e.g., Fairfield v. Wacha*, 2008 WL 584940, *2 (W.D. Mich. Feb. 28, 2008) (Maloney, J.) ("Fairfield's objection does not cite any case law or any Constitutional, statutory or regulatory provisions, and he does not attempt to *substantively* address any of the Magistrate Judge's legal reasoning or conclusions. [T]hese failings render Fairfield's purported objection the same as no objection at all.") (citing, *Wallace v. Adams*, 51 F.3d 274, 1995 WL 141385 (6th Cir. Mar. 24, 1995) (p.c.) and *Bates v. Chapleau*, 37 F.3d 1498, 1994 WL 532937 (6th Cir. Sept. 30, 1994) (p.c.)).

requirement.  *Heggie v. MDOC*, 2009 WL 36612, *2 (W.D. Mich. Jan. 5, 2009) (Maloney, C.J.)

(citing, *inter alia*, *Calderone v. US*, 799 F.2d 254, 259 (6th Cir. 1986)).  As the Magistrate suggests,

defendants CMS, Delabert, and Merlau have met this burden.

The Supreme Court interprets the Prison Litigation Reform Act ("PLRA") to require a

prisoner to comply with the prison system's "deadlines and other procedural rules," *Lafountain v.*

*Martin*, 2008 WL 1923262, *11 (W.D. Mich. Apr. 2,8 2008) (Maloney, J.) (citing, *inter alia*, *Jones*,

549 U.S. at –, 127 S.Ct. at 922-23), so long as those deadlines and rules are not imposed in a way

which violates our Constitution or the purposes of 28 U.S.C. § 1997e(a), *see Heggie*, 2009 WL

36612 at *2 (citing *Austin v. CMS, Inc.*, 2008 WL 4426342, *3 (W.D. Mich. Sept. 26, 2008) (Enslen,

J.) (citing *Spruill v. Gillis*, 372 F.3d 218, 222 (3d Cir. 2004))).  The level of detail needed to comply

with grievance procedures is permitted to vary from agency to agency, and from claim to claim, and

it is the particular prison's grievance requirements that define the boundaries of proper exhaustion.

*Baker v. Vanderark*, 2007 WL 3244075, *4 (W.D. Mich. Nov. 1, 2007) (Maloney, J.) (citing *Jones*,

549 U.S. at –, 127 S.Ct. at 923).

The only grievance which Searcy filed related to his claims in this case alleges that

physician's assistant Ouellette examined his medical file and his right ankle, agreed with non-

defendant Dr. Taludker that he suffered from arthritis, did not agree that he needed surgery, and

instead merely ordered special shoes for him, R&R at 3-4, but the grievance did not make any

mention of defendants CMS, Dr. Gelabert, or Nurse Merlau.  By failing to mention those three

defendants, he failed to comply with MDOC Policy Directive 03.02.130 ¶ T (eff. Dec. 19, 2003),

and therefore he failed to properly exhaust his administrative remedies with regard to these three

defendants.  *See, e.g., Dawson v. Norwood*, 2007 WL 3302102, *1-3 (W.D. Mich. Nov. 6, 2007)

(Maloney, J.) (dismissing § 1983 claim without prejudice due to prisoner's failure to comply with same version of MDOC Policy Directive 03.02.130 ¶ T).

**Searcy's objections do nothing to undermine this analysis.** After summarizing some of the law governing prisoner lawsuits and exhaustion of administrative remedies under the PLRA, *see* P's Objections at 1-2, Searcy invokes *Jones v. Bock*, 549 U.S. 199, __, 127 S.Ct. 910, 923 (2007), for the proposition that he was not required to specifically name each defendant in his grievance in order to exhaust those remedies, *see* P's Objections at 3. But as these defendants point out, *see* CMS Defendants' Response to P's Objections at 2-3 and Ex. A, he overlooks the fact that MDOC amended this policy directive effective July 9, 2007, *see Lafountain v. Martin*, 2008 WL 1923262, *11 n.1 (W.D. Mich. Apr. 28, 2008), and he does not allege any violations after May 2007. The statement that he quotes from *Jones* relates to the later, amended version of the policy directive and so is inapposite here.

Searcy now complains that the grievance process is faulty because the grievance forms "are insufficient and lack clarity." P's Objections at 3. He did not make this argument in his briefs opposing the defendants' summary-judgment motions. As these defendants point out, *see* CMS Defs.' Response to P's Objections at 3-4 (citing *Murr v. US*, 200 F.3d 895, 902 n.1 (6ᵗʰ Cir. 2000)), a party is not permitted to raise new arguments, issues, or evidence in objections to an R&R which he did not raise in his briefs before the Magistrate Judge. *See also Villicana v. Lafler*, 2009 WL 426639, *1 (W.D. Mich. Feb. 19, 2009) (Bell, J.) and *Williams v. Allegan Cty. Sheriff's Dep't*, 2008 WL1701649, *2 (W.D. Mich. Apr. 9, 2008) (Maloney, J.) (both citing *Murr* and *US v. Waters*, 158 F.3d 933, 936 (6ᵗʰ Cir. 1998)).

Searcy proceeds to make numerous assertions which, valid or not, are irrelevant to the

Magistrate Judge's exhaustion analysis: for example, that "the agency/prison officials should be held to a higher standard of 'Compliance' than the grievant", P's Objections at 3; and that the policy directive's requirement that he name each alleged wrongdoer is an "insignificant technicali[ty]", *id.* at 4.

Searcy next contends that an MDOC Prisoner Grievance Form relieved him of the obligation to comply with Policy directive 03.02.130 because it stated, "If you have any questions concerning the grievance procedure, refer to PD 03.02.130 and OP 03.02.130 available in the prison Law Library." Searcy reasons that the word "if" made his consultation of, and therefore compliance with, Policy Directive 03.02.130, optional. *See* P's Objections at 4-5. It is unreasonable to interpret the form's use of the word "if" in this manner. By Searcy's logic, anytime a prison form alerted a prisoner to policy directives which might provide helpful guidance and used words like "*if* you have questions" or "*if* you need further information about the applicable procedures", the form would be interpreted to relieve the prisoner of any obligation to follow the cross-reference policy directives or other authorities. The court rejects this reasoning as specious.

Searcy also insists that he should be deemed to have named CMS, Dr. Gelabert, and Nurse Merlau, by writing on the grievance form "even though I told THEM about what the Ortho Surgeons have said." P's Objections at 5-6. Searcy complains,

> The Defendants never raised the question, 'Who is THEM?' [T]he answer may lie in the fact that at the Florence Crane Correctional Facility . . . there is only one (1) P.A. (Ouellette), one (1) M.D. (Gelabert), one (1) RN Supervisor (Merlau), and one (1) Medical Service Provider (CMS). Accordingly, Plaintiff's grievance was directed to these Defendants . . . .

*Id.* at 6. But Searcy cites no authority that a prisoner is allowed to ignore an aspect of a prison's grievance procedure whenever he feels that the procedure requests information that prison officials

should be able to infer on their own, or is otherwise unnecessary.  Searcy does not contend, let alone

cite authority supporting the proposition that the "specific naming" requirement of MDOC Policy

Directive 03.02.130 ¶ T contravenes the U.S. Constitution or the purposes of 28 U.S.C. § 1997e(a),

*see Heggie*, 2009 WL 36612 at *2 (citations omitted), so he provides this court with no basis to

disturb the prison's enforcement of that requirement.

Searcy next asserts that he should be deemed to have complied with the grievance

procedures, or should be excused for failing to comply with them – it is not clear which – because

the prison allegedly rejected a grievance which used the word "on-going" but later "corrected" their

error and accepted the resubmitted grievance under a new grievance number.  According to Searcy,

because "Defendants moved are moving the grievance forward, Plaintiff is in 'Compliance.'"  P's

Objections at 6.  This is a *non sequitur*, unsupported by any authority or cogent reasoning, and does

not merit further discussion.

Searcy complains that the bottom of the prison's Step 2 and Step 3 grievance forms informed

prisoners that if they were dissatisfied after Step 3 (the Director's ruling), they could refer the

grievance to the Office of Legislative Corrections Ombudsman, an entity which he alleges has not

existed for nearly a decade.  *See* P's Objections at 7-8 and 10.  This objection is irrelevant, because

Searcy has not contended that the unavailability of a "step 4" referral to that ombudsman renders

the grievance process unconstitutional.  Moreover, Searcy has suffered no adverse consequences due

to the impossibility of requesting referral to such ombudsman.  No part of the Magistrate's analysis

rests on any supposed requirement to request referral to said ombudsman.

Searcy next attempts to argue that the grievance forms here provided him with so little

information about the available grievance procedures that any failure to exhaust administrative

remedies should be excused.  He compares the grievance forms here to the situation in *Gadson v. Goord*, 2002 WL 982393 (N.D.N.Y. May 10, 2002), P's Objections at 8, but as the defendants point in their Response to Objections at 5, *Gadson* is readily distinguishable because it involved the New York prison grievance process, not the Michigan process.  More important, in *Gadson* the issue was whether the prison failed to advise the prisoner of the requirement that he appeal the denial of his grievance.  Searcy has not alleged that the Michigan prison failed to advise him of the appeal requirement, and he did indeed appeal administratively.

Searcy's citation of *Brownell v. Krom*, 446 F.3d 305 (2d Cir. 2006), which stated that special circumstances may excuse a prisoner's failure to comply with grievance procedures, is also unavailing.  *See* P's Objections at 9.  The Second Circuit there was considering New York's prison grievance process, not Michigan's, and in any event the *Brownell* panel expressly stated that it was not ruling on whether a prisoner needed to name defendants in order to properly exhaust his administrative remedies.  The *Brownell* panel found that special circumstances existed to excuse the prisoner's noncompliance there, because prison officials refused to investigate his claim of lost property and actually thwarted administrative appellate review of the grievance.  *Id.* at 313.  By contrast, as the CMS Defendants point out in their Response to Objections at 6, there is no allegation, let alone evidence, that any prison official or employee failed to investigate Searcy's grievance or thwarted internal appellate review after the grievance was denied at steps 1 and 2.

Searcy's penultimate objection is that prison official did not respond at all to his step 1 grievance, did not respond in a timely fashion to his step 2 and step 3 filings.  *See* P's Objections at 10-11.  But Searcy presents no authority that prison officials' supposed failure to follow their own grievance procedures and rules excuses his clear failure to comply with the Policy Directive's

7

requirement that he name each alleged wrongdoer by name, which he could and should have done at step 1 but did not.

**In an attempt to forestall a ruling on the defendants' motions, Searcy notes that he filed discovery requests and what he describe as FED. R. CIV. P. 56(f) affidavits.** *See* P's Objections at 11. He asserts that "[s]ummary judgment is improper if the nonmovant is given insufficient opportunity for discovery," *id.* (citing *Ball*, 385 F.3d at 720 (6th Cir. 2004)), and that is an accurate statement of the law in our circuit. *See also Appalachian Railcar Servs., Inc. v. Boatright Enters.*, – F. Supp.2d –, –, 2008 WL 828112, *17 (W.D. Mich. Mar. 25, 2008) (Maloney, J.) (discussing FED. R. CIV. P. 56(f)). But Searcy fails to show how additional time for discovery would change the fact that he did not name the three CMS defendants as the MDOC Policy Directive clearly required. As our Circuit has long held,

> A mere assertion that further discovery will reveal a genuine issue of material fact is insufficient grounds for granting a 56(f) motion. The [party requesting a delay under Rule 56(f)] has the burden of demonstrating . . . how postponement of a ruling on the motion would enable him to rebut [the movants'] showing of the absence of a genuine issue of material fact.

*Hoffman v. Harris*, No. 92-6161, 7 F.3d 233, 1993 WL 369140, *3 (6th Cir. Sept. 21, 1993) (p.c.) (Jones, Norris, E.D. Mich. D.J. Cleland) (quoting *Emmons v. McLaughlin*, 874 F.2d 351, 357 (6th Cir. 1989)).

**Finally, Searcy filed a response to the CMS defendants' objections, but review shows that it does not undermine the Magistrate Judge's reasoning or proffer legal authority against the CMS defendants' objections.** Searcy begins his response by emphasizing that he has not conceded failure to exhaust, and agrees with defendants that a prisoner must comply with the particular prison system's procedures in order to properly exhaust. *See* P's Response to CMS Defs.'

Objections at 1-2.  Searcy then quotes the instructions from the Step 1 Grievance Form and merely asserts that his "attached documents and supporting documents are part of the grievance procedure and CMS, Merlau and Ouellette are named.  Health Services is named, even though had no idea they should be named."  *Id.* at 2.  The court cannot discern where Searcy allegedly named the CMS defendants at the outset of the grievance, and he does not undermine the finding that he did not do so.

The remainder of Searcy's response is reproduced to show that it is irrelevant, unclear, or unavailing, for example repeating the argument that defendants' own supposed failure to comply with prison procedures excuses his failure to comply:

> Defendants['] entire argument rest[s] upon names and accusation that Plaintiff has misplaced or applied the law incorrectly to this instant case.  Plaintiff knows that every case may not fit perfectly into every situation, however, they may show a connection while emanating from different contexts.  Plaintiff will not argue this matter since this argument is irrelevant.  Defendants have not denied their own non-compliance and simply because Plaintiff has not quoted exact case law does not entitle Defendants to summary judgment.
>
> Plaintiff stated that grievance procedure is faulty from its conception, however Plaintiff never stated that he was not in compliance, quite the opposite is true, nor does Plaintiff assert that the entire grievance procedure would have to be in the form to satisfy the exhaustion requirements.  According to Defendants, the level of detail necessary in a grievance to comply with the grievance procedure, here in this system[,] is identifying (who, what, [w]here, when, why, and how).  This is the jist of Defendants argument.  Out of 8 pages submitted out of a grievance policy (03.02.130) Defendants have used one paragraph and assert that the whole procedure would need to be on the form to exhaust, according to Plaintiff.  This has no merit, nor does any other argument argued here by the Defendants.
>
> Since the Defendants['] entire case rest upon names, Plaintiff has proven that Defendants were named in his grievance process.
>
> Plaintiff agrees, the Court <u>must</u> look at the "prison grievance procedure" to determine whether a prisoner has properly exhausted, when this Court does, they will find: (1) that these Defendants were named; (2) that Plaintiff's grievance did not present itself at all 3 Steps unhindered, save Step 1, which was not answered; and (3)

that the grievance form does not supply the level of detail necessary in a grievance to comply with the grievance procedure as laid out for prisoner. This Plaintiff is not seeking exemption from the grievance procedure. The grievance form only directs the prisoner to the Law Library if that prisoner has any questions.

Defendants argument that Plaintiff argues "single world" while twisting and manicuring the same, however, Defendants are correct, single words used on the grievance cannot change the requirements, this is why Plaintiff presented this illuminated view, for this Court, that these Defendants are calling "new issues" to show this Court, that Plaintiff did follow the grievance form to the letter. Plaintiff did not change the requirement, but followed the grievance form to the letter. These Defendants, none of these Defendants are entitled to dismissal or summary judgment and this Court should so find. Wherefore, for the foregoing reasons . . . .

*Id.* at 2-3 (final paragraph break added).

For the foregoing reasons, Searcy's objections to the R&R lack merit. There is no basis for this court to disturb the Magistrate's conclusion that the three CMS defendants are entitled to dismissal without prejudice for failure to properly exhaust administrative remedies.[2]

**The court respectfully declines to adopt the R&R, however, as to defendant Ouellette.**

Searcy's complaint alleges only that physician's assistant Ouellette

did a Comprehensive History and Physical Examination, looked in Plaintiff's file and stated that Plaintiff has "Arthritis." During the exam, Plaintiff could not keep his balance [or] stand on his right leg, and his mobility was off. Plaintiff again, at that time informed P.A. Margaret A. Ouelette . . . that Plaintiff needed surgery and that the problem is internal.

R&R at 5. To survive summary judgment on his Eighth Amendment cruel-and-unusual punishment claim against Ouellette, Searcy must show that a reasonable factfinder could find she was

---

[2]

Searcy's failure to exhaust administrative remedies with regard to these three defendant does not prevent the court from considering his properly-exhausted claim against Ouellette. *See Swanson v. DeSantis*, 2009 WL 80271, *11 n.3 (W.D. Mich. Jan. 9, 2009) (Maloney, C.J.) ("Federal district courts are no longer permitted to dismiss properly-exhausted habeas claims merely because the petition also contains unexhausted claims.") (citing, *inter alia*, *Okoro v. Hemingway*, 481 F.3d 873, 874 (6th Cir. 2007) (citing *Jones v. Bock*, 549 U.S. 199, –, 127 S.Ct. 910, 921 and 923-25 (2007))).

deliberately indifferent to a serious medical need of which she was actually aware.

Like the Magistrate Judge, R&R at 6, this court assumes *arguendo* (for purposes of this motion only) that Searcy satisfied the objective prong of the test, i.e., that he has shown a genuine issue of material fact as to whether his medical need was objectively serious and whether his condition posed a substantial risk or serious harm.[3]  *See, e.g., Heggie v. Kuzma*, 2009 WL 594908, *3 (W.D. Mich. Mar. 6, 2009) (Maloney, C.J.) ("The Magistrate assumed *arguendo*, as does this court, that [*pro se* prisoner] satisfies the first prong, which requires an objecting showing that the denial of medical care posed a substantial risk of serious harm.") (citation omitted).  The court finds, however, that Searcy has not satisfied the second, or "subjective" prong of the test:  that physician's assistant Ouellette *actually knew* that he faced a substantial risk of serious harm and deliberately disregarded that risk, failing to take reasonable measures to abate it.

P.A. Ouellette is entitled to dismissal for failure to state a claim, as she contended, because Searcy's complaint merely alleges that even after seeing that his right ankle was swollen, he was having trouble standing on one leg, and had impaired mobility, she misdiagnosed his condition as arthritis and did not agree with his opinion that he needed surgery.  The R&R concedes that "[d]efendant is correct that to the extent that Plaintiff merely disagrees with the treatment that Ouellette provided or asserts that he received negligent care, such fails to state a claim upon which relief may be granted."  R&R at 6 (citing, *inter alia*, *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976))); *see also Baker v. Vanderark*, 2008 WL 2788528, *7 (W.D. Mich. July 17, 2008) (Maloney, J.) ("[T]o the extent that Plaintiff merely

---

[3]

*See generally Perez v. Oakland Cty.*, 466 F.3d 416, 423-24 (6th Cir. 2006) (7th Cir. J. Cudahy, with Griffin & Moore, JJ., concurring separately in pertinent part) (discussing objective prong and defining when a medical need is "serious").

disagrees with the treatment he received, or asserts that he received negligent care, Defendants are entitled to summary judgment.") (citing, *inter alia*, *Perez*, 466 F.3d at 423). The R&R allows that Ouellette's "interpretation" of Searcy's claim is plausible, but believes that such an interpretation depends on "construing Plaintiff's claim liberally *in Ouellette's favor*." R&R at 6 (emphasis added). This court respectfully disagrees.

The court is mindful of the obligation to read a *pro se* plaintiff's complaint indulgently and liberally, *see Iswed v. Caruso*, 2009 WL 230137, *1 (W.D. Mich. Jan. 29, 2009) (Maloney, C.J.) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)), but "[p]rinciples requiring generous construction of *pro se* pleadings are not without limits." *Miller v. Royal Manor Health Care, Inc.*, 2006 WL 2666427, *4 (N.D. Ohio Sept. 14, 2006) (citing, *inter alia*, *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989) (*pro se* prisoner complaint's reference to the defendant officers' "personal involvement" in the alleged constitutional violations was insufficient to read it as stating a claim against them in their personal capacities)).

Reasonable jurists may disagree over the line between very liberal construction of a *pro se* pleading and serving as an advocate for a *pro se* party. Nonetheless, the plain and ordinary meaning of the words in Searcy's complaint, even liberally construed, must be characterized as stating a claim for negligence – perhaps gross negligence – but not any more culpable state of mind. Searcy and the R&R have not identified language in the complaint, specific to Ouellette, which reasonably supports a claim that Ouellette was *deliberately* indifferent. Nor can the court say that a reasonable factfinder could find deliberate indifference because a medical professional did not defer to a layman's assertions about which tests, treatments, or medicines he believes the physicians should order.

12

Searcy has not alleged that he received no medical care, only that Ouellete's poor judgment caused his subsequent care to be, in his view, grossly inadequate.  He also argues, *see* P's Response to CMS Defs.' Objections at 6, that his examination was nothing extraordinary because all new prisoners arriving at a Michigan prison receive such a standard examination, and that he should have been examined and treated further thereafter.  While a claim of inadequate treatment may state a claim if the treatment rendered is "so woefully inadequate as to amount to no treatment at all," *Westlake v. Lucas*, 537 F.2d 857, 860-61 (6th Cir. 1976), a federal court should be "reluctant to second guess medical judgments where a prisoner has received some medical attention and the dispute concerns the adequacy of that treatment", *Clark v. Corrs. Corp. of America*, 98 F. App'x 413, 416 (6th Cir. 2004) (citing *Westlake*, 537 F.2d at 860 n.5).  "[D]ifferences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim.  This is so even if the misdiagnosis results in an inadequate course of treatment and *considerable suffering* ."  *Kierpiec v. Caruso*, 2009 WL 723886, *3 (W.D. Mich. Mar. 11, 2009) (Edgar, J.) (citing *Gabeheart v. Chapleau*, No. 96-5050, 110 F.3d 63, 1997 WL 160322, *2 (6th Cir. Apr. 4, 1997) (Wellford, Ryan, Daughtrey)).

For this reason, our Circuit has affirmed dismissal of a prisoner's deliberate-indifference claim even where the medical condition, and the alleged consequences of inadequate treatment, were arguably equally as serious,[4] or more serious than Searcy's, such as permanent nerve damage and untreated cancer.  *See, e.g., Clark*, 98 F. App'x at 417 ("Clark . . . acknowledges that he received

---

[4] *See, e.g., Cromer v. Carberry*, 2009 WL 782566, *8-9 (W.D. Mich. Mar. 19, 2009) (Bell, J.) (dismissing deliberate-indifference claim where prisoner alleged that prison doctor discontinued his special high-top shoes, even though the doctor knew the prisoner needed the shoes as a result of injuries sustained in a shooting, causing the prisoner to be unable to walk normally and to suffer back pain and spasms).

medical treatment, arguing instead that once prison officials knew that his jaw was broken (a fact unknown for several weeks *due to misdiagnosis*), they should have taken immediate steps to treat it.  As a result of their delay, he alleges, he now has *permanent nerve damage that can only be corrected by surgery*.  We agree with the district court that Clark has failed to state a claim for denial of medical care.") (emphasis added); *Ramey v. Collins*, 2009 WL 614960 (S.D. Ohio Mar. 6, 2009) (granting summary judgment to defendants on 8th Amendment deliberate-indifference claim even though prisoner alleged "extreme pain in the prostate and colon areas, and a discharge from his penis" over a period of years, which he alleged are standard symptoms of prostate and colon cancer, and prison doctors discovered cysts in his colon yet refused to biopsy the cysts or perform a Prostate Specific Antigen Test).

Although the allegation of misdiagnosis presents an even clearer case, Searcy's allegation that Ouellette saw his difficulties and heard him say that he needed surgery but did not recommend surgery, still amounts essentially to a disagreement over medical treatment.  *See Martin v. Bristol*, No. 94-5298, 42 F.3d 1389, 1994 WL 657072, *2 (6th Cir. Nov. 21, 1994) (p.c.) (Kennedy, Siler, D.J. Churchill) ("*Martin's belief that he needed further surgery* for the removal of bone spurs in his heels *merely constitutes a disagreement over medical treatment* and, as such, does not state a claim under the Eighth Amendment.  Even if there was a misdiagnosis and the course of treatment prescribed was ineffectual, '[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner.'") (quoting *Estelle*, 429 U.S. at 106) (emphasis added).[5]

---

[5]

As the defendants note, *see* Defs.' Objections at 4-5, the R&R seems to accept the complaint's statement that "the treatment [he] received was so 'blatantly' inappropriate as to evidence intentional mistreatment . . . ."  Whether one treats Ouellette's motion as a motion for summary judgment (as it is denominated) or as a motion to dismiss for failure to state a claim on which relief can be granted (as the R&R did), the court is bound to accept only a non-movant's well-

On this complaint, it takes speculation, not liberal construction, to guess that "Plaintiff may very well be able to establish facts in support of his claim that would entitle him to relief", R&R at 7. "*The "duty to be less stringent with pro se complaint[s] does not require the court to conjure up unpled allegations," Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989) (citing *Merritt v. Faulkner*, 697 F.2d 761 (7th Cir. 1983)) (emphasis added), or to " conjure up questions not *squarely* presented to them . . . ." *Walker v. City of Cleveland*, 2007 WL 128911, *1 (N.D. Ohio Jan. 12, 2007) (Aldrich, J.) (dismissing *pro se* prisoner's complaint as meritless) (citing *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)) (emphasis added).  In Rule 12(b)(6) terms, Searcy may have created "'a suspicion of a legally cognizable cause of action'" against Ouellette, but his complaint's allegations do not "raise a right to relief *above the speculative level.*'" *Rishell v. Standard Life Ins. Co.*, 2009 WL 395884, *3 (W.D. Mich. Feb. 13, 2009) (Maloney, C.J.) (quoting *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (quoting *Bell Atlantic v. Twombley*, 550 U.S. 544, – 127 S.Ct. 1955, 1974 (2007))).


## ORDER

Defendant Ouelette's objection [document # 53] is **SUSTAINED**.

Plaintiff Searcy's objections [document # 69] are **OVERRULED**.

The R&R [document # 52] is **ADOPTED in part** and **REJECTED in part**.

The motion for summary judgment filed by defendants CMS, Gelabert, and Ouellette [document #38] is **GRANTED.**

---

pled *factual* allegations, not its legal conclusions.  *Ferron v. Zoomego, Inc.*, 276 F. App'x 473, 475 (6th Cir. 2008) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Defendant Merlau's motion for summary judgment [document #24] is **GRANTED**.

Plaintiff's claims against CMS are **DISMISSED without prejudice**.

Plaintiff's claims against Dr. Gelabert are **DISMISSED without prejudice**.

Plaintiff's claims against Nurse Merlau are **DISMISSED without prejudice**.

Plaintiff's claims against P.A. Ouellette are **DISMISSED *with* prejudice**.

This is a final order.

**IT IS SO ORDERED this 31st day of March 2009.**

/s/ Paul L. Maloney
Honorable Paul L. Maloney
Chief United States District Judge